1   Robert J. McKennon (CA Bar No. 123176),
    mckennon@barwol.com
2   Robert E. Hess (CA Bar No. 178042),
    rhess@barwol.com
3   BARGER & WOLEN, LLP
    19800 MacArthur Boulevard, 8th Floor
4   Irvine, California  92612
    Telephone:  (949) 757-2800
5   Facsimile:  (949) 752-6313

6   James Pico, Esq., (NV Bar No. 368)
    jpico@prvlawlv.com
7   PICO | ROSENBERGER
    1960 SouthEastern Street
8   Las Vegas, NV 89104
    Telephone: (702) 382-1110
9   Facsimile:  (702)  382-1173

10  Attorneys for Defendants
    The Paul Revere Life Insurance Company and
11  UnumProvident Corporation

12

13                    UNITED STATES DISTRICT COURT

14                    DISTRICT OF NEVADA – LAS VEGAS

15

16  G. CLINTON MERRICK, JR.              | Case No.: CV-S-00-0731-JCM (RJJ)
                                         | Action Filed : April 26, 2000
17                  Plaintiffs,          |

18  vs.                                  |

19  PAUL REVERE LIFE INSURANCE           | MOTION IN LIMINE NO. 1
    COMPANY; a Massachusetts corporation,|
20  UNUMPROVIDENT CORPORATION            | [Filed Concurrently With:
    (d/b/a UNUM LIFE INSURANCE           |  -   Request for Leave of Court to
21  COMPANY OF AMERICA and               |      File Reply Brief]
    PROVIDENT LIFE AND ACCIDENT          |
22  INSURANCE COMPANY); and DOES I       |
    through X inclusive, and ROES I through |
23  X, inclusive,                        |

24                  Defendants.          |

25

26  **DEFENDANTS' MOTION IN LIMINE TO PERMIT THE INTRODUCTION**
    **OF EVIDENCE RELATING TO YOUNG MEE MERRICK'S**
27  **POST-VERDICT ADMISSIONS OF PERJURY**

28

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

i:\office7\7671\337\08mils\mil01 -to permit inquiry into ymms post-verdict admissions.doc

1.    **INTRODUCTION**

Defendants The Paul Revere Life Insurance Company and UnumProvident Corporation (Collectively "Defendants") respectfully move the Court for permission to introduce evidence relating to Young Mee Merrick's post-verdict admissions of her and her husband's perjury during the first trial.  Defendants acknowledge that, during the hearing on defendants' Motion to Allow Additional Discovery From G. Clinton Merrick, Jr. and Young Mee Merrick ("Motion"), the Court expressed the view that evidence relating to Young Mee's admissions is not relevant to punitive damages and that Defendants' sole recourse for obtaining the discovery sought through the Motion was a Rule 60(b) motion.[1]  Because  the Motion did not directly address admissibility of evidence, however, prudence and the need to make a clear record for appeal dictate that Defendants obtain a ruling on the admissibility of this evidence.

Evidence relating to Young Mee's admissions might be adduced through three potential sources.  First, if either Young Mee or Clinton Merrick ("Merrick") testify at the upcoming trial, Defendants would want to cross-examine them about Young Mee's admissions.  Either party can admit evidence of the impact of Defendants' conduct on Merrick, a relevant inquiry in a punitive damages case.  If Merrick or his wife testify on this topic and leave the impression with the jury that Merrick was harmed by Defendants' conduct, Defendants should be allowed to cross-examine them about Young Mee's telephone calls.  If Young Mee does not testify truthfully about the calls then Defendants' counsel should be allowed to testify about the telephone calls to impeach her testimony.

_____

[1] Nonetheless, as discussed below, Defendants continue to assert that a plaintiff's conduct is relevant to the punitive damages analysis.

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

Second, if Merrick's bad faith expert Stephen Prater repeats (at trial) his assertions that Defendants unreasonably denied Merrick's claim, Defendants would want to ask him whether Young Mee's admissions alter his opinion.[2]

## 2.   FACTUAL BACKGROUND

### A.   Young Mee's Unsolicited Communication With Defendants' Attorneys

On July 7, 2005, Young Mee telephoned Robert McKennon, one of Defendants' counsel, and identified herself as Merrick's current wife.  Mr. McKennon, who recognized her name and voice from the trial, took the call. *McKennon Decl.* at ¶ 3.[3]

Young Mee then told Mr. McKennon that she was going to divorce Merrick and that she intended to leave their home soon.  She characterized Merrick as a "bad man" and said that she was calling from a public telephone because she did not want Merrick to trace the call.  Young Mee added that she was very fearful of what Merrick might do if he were to discover that she had called Mr. McKennon.  *Id*. at ¶ 5.

_____

[2] Because this motion, if granted, could establish Defendants' current counsel of record as trial witnesses and thereby require Defendants to retain new trial counsel, Defendants' request that the Court resolve this motion at its earliest convenience.

[3] Defendants respectfully request that this Court take judicial notice of the Declaration of Robert J. McKennon filed in support of Defendants' Motion, which Declaration is incorporated herein by this reference in support of this motion and is concurrently filed herewith.

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

1  Young Mee then stated that both she and Merrick lied on the witness stand

2  regarding his alleged disability.  She said that Merrick "forced me to lie on the

3  witness stand."  She further stated that Merrick committed fraud with respect to his

4  disability claim and that he was not then, and never had been, actually disabled.  *Id*.

5  at ¶ 6.  In response to Mr. McKennon's questions regarding Merrick's cognitive

6  condition, Young Mee told him that Merrick does not have any cognitive difficulties

7  or problems that would limit his ability to perform his occupation as a venture

8  capitalist (*id*. at ¶ 7)—which completely contradicts the testimony that Young Mee

9  and Merrick gave at trial.

10

11  Young Mee also told Mr. McKennon that she had assembled numerous

12  documents that prove that Merrick was lying at trial.  *Id*. at ¶ 8.  Unfortunately, she

13  did not provide any additional details or otherwise describe these documents.

14  However, she did indicate that she could obtain additional records to confirm that

15  Merrick is not disabled while she remains living with him and has access to them.

16  *Id*.

17

18  Mr. McKennon asked Young Mee if she would agree to testify to the

19  information she had conveyed during this call, and she said that she would.  *Id*. at

20  ¶ 9.  However, she then asked Mr. McKennon to convey to Paul Revere's

21  "President" that she wanted $5,000,000 in return for her testimony and the

22  documents that she claimed would prove that Merrick had lied about his disability,

23  that he filed a fraudulent claim, and that he was not and never had been disabled.  *Id*.

24  When Young Mee made this proposal, Mr. McKennon immediately told her that

25  under no circumstances could Paul Revere pay her anything in exchange for her

26  testimony or documents, as doing so would be inappropriate, unethical, and possibly

27  illegal.  *Id*. at ¶¶ 9, 12.  However, Mr. McKennon encouraged her to agree to testify

28  anyway to discharge her ethical obligations to the court and to counsel.  *Id*.

After the telephone call was disconnected for an unknown reason, Young Mee called Mr. McKennon again. *Id*. at ¶ 11. Another of Defendants' counsel, Robert Hess, was a witness to this second call. *Id.* at 12. After Young Mee again inquired whether Paul Revere would be interested in this evidence, Mr. McKennon again advised her that Paul Revere could not and would not pay her for her truthful testimony or evidence. *Id*. Mr. McKennon again attempted to convince her that she had an ethical and moral obligation to tell the truth without any compensation. *Id*. At that point, Young Mee ended the call but stated that she would call Mr. McKennon again the following morning. *Id*. She did not do so and has not made contact with Mr. McKennon or anyone from his office since that second call ended. *Id*. at ¶ 14.

## B.   Involvement of The United States' Attorney And The Federal Bureau of Investigation

Following these calls, Defendants' counsel retained the services of Las Vegas attorney Richard Wright, a former Assistant U.S. Attorney who specializes in criminal law. *Id*. at ¶ 13. With his assistance, Defendants made contact with Kirk Schulke of the office of the U.S. Attorney in Nevada. *Id*. Mr. Schulke advised Mr. Wright that he intended to contact an agent at the White Collar Crime division of the FBI's Las Vegas office. *Id*. Mr. McKennon then contacted David Nanz of the FBI. *Id*. Mr. McKennon had numerous telephone calls with Mr. Nanz about the calls and informed Mr. McKennon that he was very interested in investigating them. *Id*. Mr. Nanz agreed to do so and attempted to contact Young Mee on several occasions to interview her. *Id*. However, when he attempted to do so, he learned that Merrick and Young Mee had taken a vacation and were unavailable for several weeks. *Id*. Upon Merrick's and Young Mee's return, Mr. Nanz again attempted to contact Young Mee. *Id*. When Mr. Nanz attempted to contact Young Mee, however, he

1  was informed that she had retained a criminal lawyer and would refuse to answer

2  any questions and would refuse to meet with him.  *Id.*

3

4  **3.      DEFENDANTS SHOULD BE PERMITTED AT TRIAL TO**

5  **OFFER EVIDENCE OF YOUNG MEE'S TELEPHONE CALLS**

6

7          Defendants will not burden the Court by repeating our arguments about why

8  evidence that Merrick fabricated his claim and suborned his wife's perjury is

9  relevant to the punitive damages inquiry.  Defendants adhere to the position set forth

10 in the Motion, that evidence of a plaintiff's unclean hands is plainly relevant to

11 whether to bestow upon that plaintiff a punitive damages windfall and, if so, in what

12 amount.[4]

13

14         Moreover, if either of the Merricks or Prater open the door by continuing to

15 assert that the handling of Merrick's claim was egregiously improper, it would be

16 grossly unfair to deprive Defendants of the right to cross-examine the Merricks and

17 Prater regarding the newly discovered evidence of fraud and perjury and to call

18 _____

19 [4] *See, e.g.*, *White v. Ford Motor Co.*, 500 F.3d 963, 975 (9th Cir. 2007) (holding that jury in punitive damages retrial must be informed of the plaintiffs' contributory negligence because "Nevada law required the jury to consider—in arriving at a punitive damages award—'the reprehensibility of [the defendant's] conduct,' Nev. J.I. 10.20, and **reprehensibility is judged in relation to the conduct and actions of others, not merely by looking at Ford's conduct in the abstract. We assess blame for tortious conduct in relation to other contributory causes.**") (emphasis added); *Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 F.3d 446, 467 (3d Cir. 1999) (suggesting that the plaintiff's breach of a distributor agreement and its own tortious activities weighed against a high punitive award); *Hoxsey v. Beaird*, 287 F. Supp. 416, 419-20 (W.D. Okla. 968) (declining to award punitive damages to plaintiffs because of their unclean hands—specifically, their knowing wrongful receipt of confidential information); *Ezzone v. Riccardi*, 525 N.W.2d 388, 399 (Iowa), *as amended on denial of reh'g* (1994) (concluding that defendants' conduct was the result of provocation by plaintiffs, including affirmative misrepresentations, and reducing punitive award by over 90 percent); *Day v. Hill*, 1993 WL 186646 (Ohio Ct. App. 1993) (trial court properly rejected plaintiff's claim for punitive damages because of, *inter alia*, the plaintiff's unclean hands—specifically, his wrongful removal of a vehicle on which defendants had a lien).

Messrs. McKennon and Hess as witnesses to supply the factual predicate.  As the Supreme Court recently reiterated, "the Due Process Clause prohibits a State from punishing an individual without first providing that individual with an opportunity to present every available defense." *Philip Morris USA v. Williams*, 127 S. Ct. 1057, 1063 (2007).

At a minimum, the parties will put on evidence for the jury to consider in making its determination of what (if any) the amount of punitive damages should be. It is widely recognized that, among the considerations relevant to setting the amount of punitive damages are "[t]he impact of defendant's conduct on the plaintiff" (*Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992)) and "the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred" (*Garnes v. Fleming Landfill, Inc.*, 413 S.E.2d 897, 904 (W. Va. 1991)). The United States Supreme Court's cases are consonant with these holdings. In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), the Court held that there are three factors to consider in determining whether the amount of a punitive damages award comports with the federal due process clause:  "(1) the degree of reprehensibility of the defendant's misconduct; (2) **the disparity between the . . . harm suffered by the plaintiff** and the punitive damages award; and (3) the difference between the punitive damages [and comparable civil penalties where available]." *Id.* at 418 (emphasis added).  *See also White v. Ford Motor Co.*, 500 F.3d 963, 972 ((9th Cir. 2007)(Court reversing punitive damages award because district court rejected jury instruction that Ford could be punished only "for the harm to this plaintiff" and not for the harm to non-parties.)  Thus, it is Defendants' intention to question Mrs. Merrick about the impact of Defendants' conduct on her husband and the scope of harm (if any) that actually occurred.  In the event that Mrs. Merrick perpetuates her perjury during this trial by testifying that her husband was disabled or that Defendants' conduct caused him great harm, the content of her

conversations with Mr. McKennon should be admissible for impeachment purposes. In order for Mrs. Merrick to testify about the impact of Defendants' denial-of-benefits decision on her husband, she will have to affirmatively state that he was disabled. This will "open the door" for Defendants to question her about her statements to Mr. McKennon that Merrick was *not* disabled.

"A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness." *See* FRE 613, 801(d)(1)(A); *United States v. McLaughlin,* 633 F.2d 949, 952 (9th Cir. 1981) (quoting *United States v. Hale,* 422 U.S. 171, 176 (1975)). As the Tenth Circuit has explained, a "witness should not be permitted to engage in perjury, mislead the trier of fact, and then shield himself from impeachment." *United States v. Magallanez*, 408 F.3d 672, 680-681 (10th Cir. 2005). Under this principle, Mrs. Merrick cannot testify about the alleged scope of harm to Merrick (a relevant inquiry in a punitive damages trial) without Defendants having the opportunity to impeach her.

In the event that Mrs. Merrick denies making two telephone calls to Mr. McKennon or claims to have forgotten the content of those conversations, the details should be admissible through direct testimony by Messrs. McKennon and Hess. As the Ninth Circuit has explained, "if on cross-examination the witness has denied making the statement, or has failed to remember it, the making of the statement may be proved by another witness." *United States v. Monroe,* 943 F.2d 1007, 1012 (9th Cir. 1991) (internal citation omitted). Messrs. McKennon and Hess have personal knowledge of the telephone conversations and can testify regarding the details. Their testimony will be necessary to prevent Mrs. Merrick from engaging in perjury and then shielding herself from impeachment by denying knowledge of the conversations.

In sum, it is one thing to preclude Defendants from affirmatively seeking to establish that they were right all along and that Merrick is not and never was disabled; it is quite another to allow Merrick and his wife to further commit perjury, and to allow Merrick, his counsel, and his expert witness to perpetrate a continuing fraud by maintaining, in the face of newly discovered evidence to the contrary, that Defendants had no reasonable basis for denying his claim and did so only because they are companies bent on cheating their insureds.  The Court's ruling on Defendants' Motion may have been a shield, but a ruling that Defendants cannot raise this evidence in response to Merrick's attempt to procure a large punitive award by fraud and perjury would be a lethal sword.

## 4.   CONCLUSION

The Court should permit Defendants to introduce evidence of Young Mee Merrick's post-verdict admissions of perjury.

Dated:  April 16, 2008                    BARGER & WOLEN, LLP


By:  _/s/ Robert J. McKennon_
ROBERT J. MCKENNON
ROBERT E. HESS
Attorneys for Defendants The Paul
Revere Life Insurance Company and
UnumProvident Corporation

1

## CERTIFICATE OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF ORANGE

3      I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 19800

4 MacArthur Blvd., Suite 800, Irvine, CA  92612; Facsimile No.: (949) 752-6313; E-mail address: lacoba@barwol.com.

5      On **April 16, 2008**, I served the foregoing documents described as:

6 **DEFENDANTS' MOTION IN LIMINE TO PERMIT THE INTRODUCTION OF EVIDENCE RELATING TO YOUNG MEE MERRICK'S POST-VERDICT ADMISSIONS OF PERJURY** on the interested parties

7 pursuant to the attached Service List.

8 ☒      **ELECTRONICALLY:** I caused a true and correct copy thereof to be electronically filed using the Court's Electronic Court Filing ("ECF") System and

9 service was completed by electronic means by transmittal of a Notice of Electronic Filing on the registered participants of the ECF System.  I served those parties who are not registered participants of the ECF System as indicated below.

10 ☐      I placed the ☐ original ☐ a true copy thereof enclosed in sealed envelope(s)

11 to the parties listed above and caused such envelope(s) to be delivered by ☐      **U.S POSTAL SERVICE**      ☐      **OVERNIGHT DELIVERY**.

12 ☐      **BY E-MAIL:** I electronically transmitted a true and correct copy thereof to the interested parties' electronic notification address(es) of record before close of

13 business for the purpose of effecting service and the transmission was reported as complete and without error.

14 ☐      **FACSIMILE TRANSMISSION:** Based on ☐ court order ☐ agreement of the parties, I caused a true copy thereof to be served by transmitting via facsimile

15 machine to the interested parties' facsimile number(s) of record before close of business.  The transmission was reported as complete, without error.

16 ☐      **PERSONAL DELIVERY:** I caused ☐ the original ☐ a true copy thereof to be delivered by hand to the interested parties by an employee or independent

17 contractor of a registered process service.

18      I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of

19 the State of California that the above is true and correct.  Executed at Irvine, California on **April 16, 2008**.

20

21   NAME: Lizette C Acoba                              (Signature)

22

23

24

25

26

27

28

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-1-

1

<u>SERVICE LIST</u>

2

3

Julie A. Mersch, Esq.                                   Attorneys for Plaintiff
4
701 S. 7th Street
Las Vegas, NV 89101
5
Tel: 702-387-5868
Fax: 792-387-0109 fax
6
E-mail: jam@merschlaw.com

7

Charles McB. Sasser, Esq.                               Attorneys for Plaintiff
8
The Sasser Law Firm, P.A.
1011 East Morehead Street, Suite 350
9
Charlotte, NC 28204
10
Tel: 704-342-4200
Fax: 704-342-0798
11
E-mail: jtrusso@sasserlawoffice.com

12

Richard H. Friedman, Esq.                               Attorneys for Plaintiff
13
Friedman, Rubin & White
1126 Highland Avenue
14
Bremerton, Washington 98337
15
Tel: 360-782-4300
Fax: 360-782-4358
16
E-mail: rfriedman@frwlaw.us

17

18

19

20

21

22

23

24

25

26

27

28

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-2-